Sanders, Janet L., J.
Plaintiff, a shareholder of the defendant Vertex Pharmaceuticals, Inc. (Vertex), brought this action pursuant to G.L.c. 156D, §16.02 seeking to inspect certain corporate books and records. After the denial of cross motions for judgment on the pleadings, this matter was transferred from Middlesex County to the Business Litigation Session. On July 10, 2015, the parties came before this Court for jury-waived trial. This Court concludes that plaintiff has failed to meet the requirements of G.L.c. 156D, §16.02 and is therefore not entitled to inspect the books and records outlined in his demand letter.
FINDINGS OF FACT
Vertex is a pharmaceutical company based in Boston that discovers, develops, manufactures and commercializes small molecule drugs for the treatment of serious diseases. One of those drugs is Kalydeco, developed by Vertex to treat the underlying cause of cystic fibrosis. After the Food and Drug Administration (FDA) in January 2012 approved Kalydeco, Vertex initiated a study to determine whether the drug, when taken together with another experimental drug, VX-809, could improve lung function in people afflicted *37 with the disease. The study was to proceed in three phases.
On May 7, 2012, Vertex issued a press release announcing interim data in connection with Phase Two of the study (the May 7 press release). The press release stated that 46 percent of patients participating in the study showed “absolute improvement” in lung function of 5 percent or more, and 30 percent experienced “absolute improvement” of 10 percent or more. Stock prices for Vertex that day closed at $58.12 per share, representing a 35 percent increase over its closing price on the last trading day before the press release.
On May 29, 2012, Vertex issued a second press release (the May 29 press release), this one announcing a correction in the interim data. Thirty-five percent of patients (as opposed to the earlier reported 46 percent) had experienced an absolute improvement in lung function of five percent or more, and 19 percent (as opposed to the earlier reported 30 percent) showed an absolute improvement of ten percentage points. The press release also noted that the earlier results were “relative improvements, not absolute improvements as originally reported.” Vertex’s stock price closed that day at $57.80, down from $61.18 a share on the last trading day before the press release.
In the intervening period between the first and the second press release, five Vertex directors and two of its officers sold off millions of dollars in Vertex stock. The maj orily of this stock was sold by Nancy Wysenski, who sold over $20 million worth during this period. This trading and the timing of it (as reported in the Boston Globe) caught the attention of United States Senator Charles B. Grassley. In a letter dated June 7, 2012, Grassley suggested the Securities and Exchange Commission look into the matter.
On June 28, 2012, Vertex released a third press release, this time reporting the improvement in lung function in a different manner than the first two releases. This third release acknowledged that during the first 28 days of the study, there was a decline in lung function for all patients; the improvement came in the second period, from Days 28 to Day 56, when those patients taking the experimental drug combination showed “statistically significant mean absolute improvements in lung function.” The extent of the improvement depended on the level of drugs administered. Vertex stock price declined, to close at $51.18 per share that day.
In a letter dated November 19, 2012, the New York law firm of Levi Korsinsky, LLP, on behalf of a Vertex shareholder named Christine Carroll, made a formal written demand on the Vertex Board of Directors to investigate the trading activity of its directors and officers and the circumstances surrounding the issuance of the press releases. Specifically the letter alleged that the May 7 press release contained false and misleading statements, which in turn led to an “artificial increase” in Vertex’s stock value. Taking advantage of this, certain of the company’s officers and directors “enriched themselves by more than $37 million.” The letter demanded that Vertex initiate legal action to force the directors and officers who sold stock between May 7 and May 29 to disgorge their profits. The letter stated that a failure to respond within 30 days would be construed as a rejection of the demand, forcing the firm, on Carroll’s behalf, to pursue a derivative action.
Vertex responded in a December 6,2012 letter from its counsel. It promised to conduct a “reasonable inquiry” into the issue raised and requested supplemental information concerning certain topics. Shortly thereafter, the Board of Directors voted to form a Special Committee to investigate plaintiffs allegations and to advise the Board as to how to proceed. The Special Committee consisted of two directors, Terrence Kearney and Yutan Lee. Both men were listed in Vertex’s 2013 proxy statement filed with the SEC as meeting the definition of “independence” adopted by NASDAQ. Goodwin Procter was retained as independent counsel to assist the Special Committee in its investigation.
Around this same time period, it was discovered that Carroll was not a shareholder at the time of the events in question. Levi Korsinsky informed Vertex by letter dated January 10, 2013 (the January 10 demand letter) that it was substituting plaintiff Fred Chitwood in her place. Chitwood is a retired electrician residing in Indiana who owned 100 shares of stock in Vertex at the time. Although he testified at trial, he had only a limited understanding about the claims that Levi Korsinsky was making on his behalf. As to the basis for the allegations of wrongdoing, he could cite only the Grassley letter, saying that he relied on his attorneys (who did not charge him any fee) to conduct an investigation for him.
The January 10 demand letter alleged that there were materially false statements and omissions in Vertex’s three press releases concerning the Kalydeco study. It also stated that, “based on the massive insider stock sales” that occurred between the May 7 and May 29 press releases, “there is an inference” that the insiders were aware that the initial reports concerning the drug therapy’s success rate were false. In response to the earlier request from Vertex’s attorneys for any information Levi Korsinsky might have supporting its allegations, the firm stated that this request was more properly directed to Vertex’s board and its senior management, since plaintiff was in no position to conduct discovery. There would be two more requests for information made by Vertex over the ensuing months, with the same response from Levi Korsinsky. At no time did the firm provide any specific information to support the allegations, aside from the chronology of events and the inferences that could be drawn therefrom.
*38 Over the next three months, the Special Committee conducted an investigation and ultimately concluded that there had been no breach of fiduciary duty by any officer or director concerning the matters raised by plaintiff and that it would not be in the best interests of the company to initiate any legal action. On April 6, 2013, the Special Committee submitted its report and recommendations to the Board of Directors. Only those directors deemed to be independent attended the meeting and participated in the discussions. There is no evidence before the Court challenging their designation as independent directors. These directors voted unanimously to accept the findings and recommendations of the Special Committee.
In an April 26, 2013 letter, the Special Committee reported this vote to Levi Korsinsky and also summarized what it had done to investigate the allegations. As described in that letter and corroborated by the trial testimony of Kearney, the Special Committee looked into the circumstances that led to the issuance of the May 7 press release and the reasons why it contained an error. It concluded first that the error was the result of “misinterpretation and mislabeling of certain unlabeled interim data” that was provided to Vertex by an outside vendor: based on how earlier cystic fibrosis studies had been reported, the Vertex staff assumed percentage data provided by the outside vendor reflected absolute results when in fact these results were relative. Before the press release was issued, Vertex’s Disclosure Committee reviewed the data, unaware of the mislabeling error, and after meeting three times to discuss the results, approved the disclosure to be made in the May 7 press release with no reason to know or to suspect that it was inaccurate in any way. The error was not discovered—and therefore was unknown to Vertex’s senior management—until May 25, 2012 when steps were immediately taken to correct the error, resulting in the May 29 press release. The Special Committee noted that the correct results remained “quite positive” and that the study proceeded on to Phase 3, with the FDA’s blessing.[1]
The Special Committee also informed Levi Korsinsky that it had interviewed the individuals identified as having made the stock sales in question, and had reviewed the company’s internal controls for such trades to determine if there had been compliance. It concluded that trades made by four of the individuals identified by the plaintiff were pursuant to 10b5-l plans that had been entered into well before the Phase 2 data became available. Trades by the remaining three individuals complied with the company’s insider trading policy, which required pre-clearance by Vertex’s general counsel and attestation by the individual in question that he or she did not possess any material nonpublic information at the time of the trade. The Special Committee paid particular attention to Nancy Wysenski, who had made the largest sale of stock. The committee determined that, before the trades, she had decided to retire and was required to exercise certain stock options within 90 days of her departure or else face an extended “black out period” barring any sales as a result of the company’s insider trading policy.
Not content with this explanation, Levi Korsinsky responded in a June 19, 2013 letter demanding to inspect certain books and records of Vertex (the June 19 Demand). The June 19 Demand set forth nine categories of documents, including specific requests for the Special Committee’s work papers, minutes of its meetings, notes and memoranda prepared in connection with the investigation, and earlier drafts of its final report. The June 19 Demand cites a single purpose for the requests: “to investigate potential wrongdoing, mismanagement, and breaches of fiduciaiy duties by members of the Board or others in connection with events, circumstances, and transactions” described in the original demand letter back in November 2012.
The June 19 Demand was rejected in a letter dated June 26, 2013. The letter essentially outlines the position that the defendant would take at trial— namely, that plaintiff did not have a “proper purpose” for his demand, and that even if he did, his demand was overbroad. This lawsuit was filed in August 2013. Plaintiff has not filed any derivative action against Vertex.
CONCLUSIONS OF LAW
A shareholder of a Massachusetts company is entitled to inspect corporate books and records if the following four requirements are met: 1) the demand is made in good faith and for a proper purpose; 2} the shareholder describes with reasonable particularity his purpose and the records that he desires to inspect; 3) the records are directly connected with his purpose; and 4) the corporation shall not have determined in good faith that disclosure of the records sought would adversely affect the corporation in the conduct of its business. G.L.c. 156D, §16.02(c). If those requirements are satisfied, plaintiffs right to inspect records in this case would be limited to: “excerpts from minutes reflecting any action taken at any meeting of the board of directors [and] records of any action of a committee of the board of directors while acting in place of the board of directors on behalf of the corporation . . .” G.L.c. 156D, §16.02(b). The defendant argues that neither the requirements of Section 16.02(b) nor 16.02(c) are met. This Court concludes that plaintiff here has failed to meet his burden of showing a proper purpose and thus need not reach the other arguments asserted by the defendant.
There is no Massachusetts appellate authority discussing the proper purpose requirement of Section 16.02. But see Donaldson v. Boston Herald-Traveler Corp., 347 Mass. 274, 279-80 (1964) (discussing common-law right of inspection). There is a detailed discussion of the requirement, however, in Gent v. Teradyne, 2010 WL 5071862, 27 Mass. L. Rptr. 517 *39 (2010) (Fabricant, J.), a Superior Court decision which looks to the law of Delaware, with a similar statute. Based on that case law, Judge Fabricant there concluded that a books and records request in connection with suspected wrongdoing and mismanagement by the corporation’s officers and directors is a proper purpose, provided that “the shareholder presents some evidence that establishes a credible basis from which a court can infer the existence of legitimate issues as to such conduct warranting further investigation.” 2010 WL 5071862 at *6. In Gent, the records demand alleged as its purpose possible mismanagement and wrongdoing by the corporation in connection with stock option grants to certain officers and directors, including possible backdating. In ruling on a motion for summary judgment, the court noted that the evidence before it showed at best “fortuitous timing” for the stock grants—perhaps enough to state a claim if plaintiff filed a derivative action but not enough to support the plaintiffs burden under G.L.c. 156D, §16.02.
As in Gent the plaintiff premises his demand for books and records upon allegations of corporate wrongdoing and mismanagement. The question is whether he has presented evidence that establishes a “credible basis” for those allegations that warrants further investigation. In arguing that he has, plaintiff points to the large insider sales of Vertex stock that occurred immediately after the admittedly erroneous May 7 press release about its Phase 2 study and before the May 29 correction. This chronology of events was enough to prompt a letter from U.S. Senator Grassley to the SEC to look into the matter; it therefore should be enough, in plaintiffs view, to satisfy his burden of demonstrating a proper purpose for his request for corporate records. As Gent makes clear, however, the plaintiff must present some evidence of wrongdoing; simply relying on the timing of certain events is not sufficient.
Indeed, plaintiff in the instant case stands on an even weaker footing that the plaintiff in Gent, where the company itself did nothing to look into plaintiffs allegations of improper stock option backdating. Here, in contrast, Vertex did take action, appointing a Special Committee of two independent directors with unrestricted power to investigate the allegations. That committee’s findings were summarized in great detail for the plaintiff, who offered no evidence at trial calling into question the independence of the Special Committee or the diligence of its efforts. In the absence of such evidence, the Special Committee’s conclusion (ultimately accepted by the Board) would warrant dismissal of any derivative action the plaintiff might file, since that decision is entitled to protection under the business judgment rule, pursuant to G.L.c. 156D, §7.44.
Section 7.44, which governs derivative actions, provides additional support for this Court’s conclusion that plaintiff is not entitled to the records he seeks under Section 16.02. Section 7.44 provides that, once a corporation moves to dismiss a derivative suit based on the findings of a special committee, all discovery proceedings shall be stayed until the court rules on the motion. A limited exception for “specified discovery” is permitted but only after hearing and a finding of “good cause.” This restriction on the shareholder plaintiff is not unfair in light of the fact that the corporation bears the burden of proving that the special committee was independent and that it conducted a reasonable inquiry. If the corporate defendant fails to sustain that burden, then the case proceeds. To permit discovery now would render those limitations meaningless and essentially put the cart well before the horse.
ORDER OF JUDGMENT
For all the foregoing reasons, it is ORDERED that Judgment enter DISMISSING plaintiffs claim, with prejudice.

 Ultimately, the FDA approved the drug therapy for use in treating patients afflicted with cystic fibrosis. Although not relevant to this Court’s rulings, Vertex stock was trading at $124 a share as of the day of trial.